IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **US AIRLINE PILOTS ASSOCIATION**<br>**5821 Fairview Road**<br>**Suite 400**<br>**Charlotte, NC 28209,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**PENSION BENEFIT GUARANTY**<br>**CORPORATION**<br>**1200 K Street NW**<br>**Washington, DC 20005,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No.** _____ |

## COMPLAINT

1.    This is a civil action for equitable and declaratory relief brought by the US Airline

Pilots Association ("USAPA") against the Pension Benefit Guaranty Corporation ("PBGC") in

PBGC's capacity as statutory trustee and fiduciary of the Retirement Income Plan for Pilots of

US Airways, Inc. ("the Plan"). Although PBGC was appointed trustee of the Plan in 2003, it has

refused to perform its statutory and fiduciary duties under the Employee Retirement Income

Security Act of 1974 ("ERISA") and other federal law, and has failed to investigate the financial

affairs of the Plan and seek to remedy, as appropriate, any breaches by the former trustees of the

Plan. As a result of PBGC's refusal to perform its statutory and fiduciary duties, the Plan's

assets remain substantially depleted and USAPA members who are vested in the Plan receive

significantly less benefits. This Court should either (i) direct PBGC to investigate and pursue

any claims on behalf of the Plan, or (ii) remove PBGC as statutory trustee and appoint another

trustee who will perform the statutory and fiduciary duties required of a trustee under ERISA and

other federal law.

## APPLICABLE STATUTES, JURISDICTION, VENUE, AND DESCRIPTION OF PARTIES

2.      This action is brought under the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. and other federal laws.

3.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C.

§ 1303(f) (ERISA) and 28 U.S.C. § 1331 (federal question).  Declaratory relief is proper

pursuant to 28 U.S.C. §2201.

4.      Venue is proper under 29 U.S.C. § 1303(f) because this District is designated as

an "appropriate court" to seek equitable relief, and under 28 U.S.C. §§ 1391(b) and (c) because

PBGC's principal offices are located in this District and PBGC regularly does business in this

District.

5.      Plaintiff US Airline Pilots Association ("USAPA") is an employee organization

representing more than 5,200 pilots actively working for US Airways, Inc. ("US Airways").

USAPA became the National Mediation Board-certified bargaining agent for all US Airways

pilots on April 18, 2008, and is an authorized collective bargaining unit for the US Airways

pilots for purposes of the Plan. *See* 29 U.S.C. § 1303(f)(1).  Approximately 3,000 USAPA

members are participants in and beneficiaries of the Plan, and have been directly and adversely

affected by PBGC's failure to comply with its statutory and fiduciary duties to investigate the

financial affairs of the Plan and remedy any breaches by the Plan's former trustees.

6.      The Pension Benefit Guaranty Corporation ("PBGC") is a U.S. government

corporation within the U. S. Department of Labor.  Pursuant to Title IV of ERISA, PBGC insures

private-sector defined-benefit pension plans. 29 U.S.C. §§ 1301-1461. When a plan covered under Title IV of ERISA terminates with insufficient assets to satisfy its pension obligations to its employees, PBGC awards insurance benefits, up to a statutory maximum. 29 U.S.C. § 1322(b)(3). Pursuant to Title IV of ERISA, PBGC can also become the plan's administrator or trustee upon termination of a covered pension plan. 29 U.S.C. § 1342. PBGC was appointed statutory trustee of the Retirement Income Plan for Pilots of US Airways, Inc. on March 31, 2003, and currently serves as the Plan's trustee.

## FACTUAL ALLEGATIONS

7.      In 1958, US Airways (then known as Allegheny Airlines) established a program to compensate its pilots for their years of dedicated service. The program provided the pilots with security in their retirement years by sponsoring a vested, defined-benefit pension plan. The program was revised in 1972, but incorporated, in part, benefits of the old version by granting preexisting pilots benefit rights based on the actual investment value of a group or pool of diversified stocks. The plan was most recently known as the Retirement Income Plan for Pilots of US Airways, Inc. ("the Plan").

8.      The Plan is a defined-benefit pension plan and, under 29 U.S.C. §§ 1002 and 1003, is governed by ERISA.

9.      As of December 31, 2000, US Airways' filings with the U.S. Securities and Exchange Commission showed that the Plan was almost fully funded.

10.      On August 11, 2002, US Airways, along with its parent holding company and five affiliates, filed a petition for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Virginia. The petition sought reorganization under Chapter 11 of the Bankruptcy Code.

11.     On January 30, 2003, US Airways filed a notice of intent to terminate the Plan under 29 U.S.C. § 1341.  US Airways claimed that, as of December 2003, the Plan had approximately $2.1 billion of unfunded liabilities.

12.     The motion to terminate the Plan was opposed by the pilots and their union at the time, the Air Line Pilots Association ("ALPA"), as well as by the Retired Pilots Association of US Airways (known as "the Soaring Eagles") and a number of other pilots groups.  The active and retired pilots argued that termination of the Plan would have a devastating effect on the pilots and would be highly unfair, since the debtors had not sought to terminate the retirement plans of any other employee groups.

13.     Although PBGC attended the bankruptcy proceedings, it took no position on whether the Plan should be terminated, and limited its participation to advising the bankruptcy court on PBGC's views of ERISA's distress termination provisions.  PBGC advised the court that PBGC had the right to permit or disallow a distress termination, and that pursuant to 29 U.S.C. § 1347, it would "take such actions as are necessary to restore the pension plan to its pre-termination status."

14.     The bankruptcy court sympathized with the pilots, and agreed that they should "feel a particularly keen sense of having been shabbily treated" by US Airways.  *In re US Airways Group Inc.*, 296 B.R. 734, 744 (Bankr. E.D. Va. 2003).  The court also observed that it was "obvious that many individuals [would] indeed suffer great financial hardship" if the Plan was terminated.  *Id.* at 746.

15.     Nevertheless, on March 7, 2003, the bankruptcy court ruled that US Airways had met the standards for a distress termination of the Plan under 29 U.S.C. § 1341(c).  *Id.* at 748.  The court's ruling was conditioned on an arbitration proceeding to determine whether

termination would violate the collective bargaining agreement between US Airways and ALPA. *Id.; see also* 29 U.S.C. § 1341(a)(3).

16.     On March 27, 2003, US Airways, ALPA, and PBGC entered into a consent agreement whereby they agreed to terminate the Plan.  US Airways and ALPA further agreed to amend the collective bargaining agreement to permit and facilitate the Plan's termination.

17.     On March 31, 2003, the Plan became a terminated plan, and PBGC was appointed statutory trustee of the Plan pursuant to Section 1342 of ERISA.

18.     As trustee, PBGC is empowered and required by ERISA to do the following:

(a)     "to do any act authorized by the plan or this subchapter to be done by the plan administrator or any trustee of the plan," 29 U.S.C. § 1342(d)(1)(A)(i);

(b)     "to do such other acts as he deems necessary to continue operation of the plan without increasing the potential liability of the corporation, if such acts may be done under the provisions of the plan," 29 U.S.C. § 1342(d)(1)(A)(vi);

(c)     "to require the plan sponsor, the plan administrator, any contributing or withdrawn employer, and any employee organization representing plan participants to furnish any information with respect to the plan which the trustee may reasonably need in order to administer the plan," 29 U.S.C. § 1342(d)(1)(A)(vii);

(d)     "to commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan," 29 U.S.C. § 1342(d)(1)(B)(iv); and,

(e)     "to do such other acts as may be necessary to comply with this subchapter or any order of the court and to protect the interests of plan participants and beneficiaries," 29 U.S.C. § 1342(d)(1)(B)(viii).

19.     As statutory trustee under ERISA, PBGC "shall be subject to the same duties as those of a trustee under section 704 of title 11, and shall be, with respect to the plan, a fiduciary within the meaning of paragraph (21) of section 1002 of this title." 29 U.S.C. § 1342(d)(3).

20.     As statutory trustee subject to the duties of a trustee under other federal laws, PBGC must "investigate the financial affairs" of the Plan.  11 U.S.C. § 704(a)(4).

21.     As a fiduciary to the Plan within the meaning of ERISA, 29 U.S.C. § 1002(21), PBGC must "discharge [its] duties with respect to [the Plan] solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

22.     Since PBGC was appointed trustee of the Plan, it has received a number of requests to investigate how the Plan was managed, and how its assets were invested.  For example, PBGC has received information from the Soaring Eagles that the Plan's prior fiduciaries were transferring assets of the Plan to other US Airways plans.  Further, PBGC attended the bankruptcy proceedings where affected parties alleged that the Plan was mismanaged and inadequately funded, and that its assets were improperly invested.

23.     Notwithstanding the foregoing, and other information concerning management and investment malfeasance relating to the Plan, PBGC has undertaken no meaningful steps to comply with its investigatory and other duties as trustee under ERISA.

24.     USAPA and its members have attempted on their own to investigate allegations of misconduct by earlier fiduciaries of the Plan.  However, those efforts have been thwarted by the union's inability to compel the production of documents or testimony from relevant parties, and

by the paucity of information that the union has received from US Airways and PBGC. USAPA's request for records from US Airways was rejected, and its FOIA requests to PBGC have produced few relevant documents. Nonetheless, USAPA's own investigation has uncovered a number of questionable circumstances surrounding activities of the Plan's prior fiduciaries.

25.     On June 18, 2009, counsel for USAPA sent a letter to the acting director of PBGC, which outlined PBGC's duties as statutory trustee of the Plan and demanded that PBGC comply with those duties. The letter stated that, to the extent PBGC believes it has complied with its duties, it should share the results of any investigation into the conduct of the Plan's former trustees and the outcomes of any attempts to remedy the harms the former trustees caused. A copy of the June 18, 2009 letter is attached as Exhibit 1 to this Complaint and is incorporated by reference.

26.     On July 9, 2009, Judith Starr, general counsel of PBGC, responded to USAPA's June 18 letter. In her letter, Ms. Starr claimed that PBGC has been investigating the allegations by the Soaring Eagles that there were improper transfers from the Plan to other plans sponsored by US Airways, but admitted that the investigation is "not at this time complete." Ms. Starr ignored USAPA's request for information about the status of any other investigation, and merely requested information and documentation that she claimed was needed before PBGC would investigate the issues described in USAPA's June 18, 2009 letter. A copy of Ms. Starr's July 9, 2009 letter is attached as Exhibit 2 to this Complaint and is incorporated by reference.

27.     On July 17, 2009, counsel for USAPA responded to Ms. Starr's letter. The response pointed out that PBGC, not the pilots' union, "has the duty under ERISA and other federal law to investigate the earlier trustees' management of the Plan." (citing 29 U.S.C. §

1342(d)(3)). The letter also identified a number of suspicious and potentially improper activities that took place before the Plan's termination, including:

(a)    allegations of fraud asserted by creditors in the US Airways bankruptcy proceedings that were not specifically addressed and adjudicated by the bankruptcy court;

(b)    the relationship between US Airways management and Tiger Management Fund (a.k.a. Tiger Management L.L.C. or Tiger Performance L.L.C.), including an equity swap agreement on or about September 17, 2001, that involved 8,291,700 shares of US Airways Group, Inc.;

(c)    the apparent decisions of the Plan and its investment managers to invest in a number of specific stocks without taking steps to protect the Plan as those stocks lost most if not all of their value over a very short period of time;

(d)    the investment strategies and decisions of several investment managers of the Plan -- particularly those who lost significant portions of the investment dollars they where managing -- to determine whether the strategies pursued were consistent with the investment guidelines of the Plan;

(e)    the decision of the Plan to invest in Alchemy Partners (Air) LLP or Alchemy Partners (Guerney) Limited; and

(f)    the $2.1 billion funding shortfall that precipitated the Plan's distress termination on March 31, 2003.

28.    In its July 17, 2009 letter, USAPA requested a "comprehensive response to this letter, including the production of all documents and materials requested, by no later than August 7, 2009." A copy of the July 17, 2009 letter is attached as Exhibit 3 to this Complaint and is incorporated by reference.

29.    PBGC has not responded to USAPA's July 17, 2009 letter.

## CLAIMS FOR RELIEF

### Count One

### Breach of Duty To Investigate

30.    USAPA repeats and realleges the previously numbered paragraphs of this Complaint as if set forth herein.

31.    As statutory trustee of the Plan, PBGC has a duty to investigate the Plan's financial affairs.  11 U.S.C. § 704(a)(4).

32.    As statutory trustee of the Plan, PBGC is a fiduciary of the Plan and is responsible for undertaking all fiduciary duties that ERISA imposes on ordinary trustees, including the duties of care, skill, prudence and diligence. *See* 29 U.S.C. § 1342(d)(3); *see also* 29 U.S.C. §§ 1104, 1105.

33.    In accordance with its fiduciary duties, PBGC must investigate the relevant facts and explore alternative courses of action.

34.    At no point since becoming the Plan's statutory trustee has PBGC conducted a reasonable investigation of the Plan's financial affairs or taken any meaningful steps to determine whether the Plan's former trustees breached their fiduciary duties and whether they may be liable for their potential breaches.

35.    On information and belief, PBGC has not even undertaken a comprehensive audit of the Plan's transactions before becoming statutory trustee, which would have shown whether the Plan's prior trustees had exercised proper care in transfers and distributions.

36.    As the Plan's statutory trustee, PBGC has repeatedly and substantially violated its duties.  During the more than six years that PBGC has been the Plan's statutory trustee, it has not adequately investigated the financial affairs of the Plan.

37.     It was imprudent, careless, and not diligent for PBGC, as statutory trustee of the Plan, not to investigate the Plan's financial affairs and the potential claims that may be brought on the Plan's behalf against the Plan's former trustees for causing the Plan's significant funding shortfall and precipitous decline in value.

38.     PBGC has breached its duties and continues to breach its duties.  In particular, PBGC has failed to investigate the Plan's financial affairs and the potential claims that may be brought on the Plan's behalf against the Plan's former trustees for causing the Plan's significant funding shortfall and precipitous decline in value.

39.     As participants in and beneficiaries of the Plan, USAPA's members have been adversely affected by PBGC's breaches of its duties, which have diminished the Plan's assets, caused them to receive or expect to receive substantially diminished retirement benefits, and kept them from knowing the truth about the Plan's funding shortfall and suspiciously precipitous decline in value.

40.     PBGC's failure to investigate the financial affairs of the Plan and the potential claims that may be brought on the Plan's behalf may have prejudiced or diminished the Plan's ability to pursue claims against former trustees for causing the Plan's significant funding shortfall and precipitous decline in value.

41.     PBGC's violations of ERISA and other federal law threaten USAPA with irreparable injury for which there is no adequate remedy at law.

## Count Two

### Breach of Duty To Rectify
### 29 U.S.C. §§ 1303(f)(1), (4)

42.     USAPA repeats and realleges the previously numbered paragraphs of this Complaint as if set forth herein.

43.     As statutory trustee of the Plan, PBGC is a fiduciary of the Plan and is responsible for undertaking all fiduciary duties that ERISA imposes on ordinary trustees, including the duties of care, skill, prudence and diligence. *See* 29 U.S.C. § 1342(d)(3); *see also* 29 U.S.C. §§ 1104, 1105.

44.     In accordance with its fiduciary duties, PBGC must investigate the relevant facts, explore alternative courses of action, and, if in the best interests of the Plan's participants and beneficiaries, bring suit against persons who are potentially liable to the Plan.  In accordance with its fiduciary duties, PBGC also must reasonably attempt to remedy the breaches of prior trustees and co-fiduciaries.

45.     At no point since becoming the Plan's statutory trustee has PBGC taken any meaningful steps to determine whether the Plan's former trustees breached their fiduciary duties and whether they may be liable for their potential breaches.

46.     As the Plan's statutory trustee, PBGC has not made a reasonable attempt to remedy the potential breaches of the Plan's former trustees.

47.     As the Plan's statutory trustee, PBGC has repeatedly and substantially violated its duties.  During the more than six years that PBGC has been the Plan's statutory trustee, it has never investigated potential claims that may be brought on the Plan's behalf against the Plan's former trustees.

48.     PBGC also has never attempted to remedy the Plan's former trustees' breaches of fiduciary duty, inasmuch as they actually breached their duties.

49.     It was imprudent, careless, and not diligent for PBGC, as statutory trustee of the Plan, not to reasonably attempt to remedy those breaches, inasmuch as it knew or should have known about any former trustees' breaches of fiduciary duties owed to the Plan and its participants and beneficiaries.

50.     PBGC has breached its duties and continues to breach its duties.  In particular, PBGC has failed to attempt to remedy the Plan's former trustees' breaches of fiduciary duty, inasmuch as they actually breached their duties and PBGC knew or should have known about those breaches.

51.     As participants in and beneficiaries of the Plan, USAPA's members have been adversely affected by PBGC's breaches of its duties, which have diminished the Plan's assets, caused them to receive or expect to receive substantially diminished retirement benefits, and kept them from knowing the truth about the Plan's funding shortfall and suspiciously precipitous decline in value.

52.     PBGC's violations of ERISA and other federal law threaten USAPA with irreparable injury for which there is no adequate remedy at law.

## **PRAYERS FOR RELIEF**

Plaintiff USAPA respectfully requests this Court to grant the following interim relief:

A.     During the pendency of this lawsuit, and until such time as this Court renders a final decision on the merits of USAPA's claims, empower a special trustee, on an interim and temporary basis, to investigate the Plan's financial affairs and the potential claims that may be brought on the Plan's behalf against the Plan's former trustees for causing the Plan's

significant funding shortfall and decline in value; and

        B.     During the pendency of this lawsuit, and until such time as this Court renders a final decision on the merits of USAPA's claims, empower a special trustee, on an interim and temporary basis, to pursue such actions as are appropriate to seek to remedy the Plan's former trustees' breaches of fiduciary duty, insofar as the former trustees actually breached their duties.

Further Plaintiff USAPA respectfully requests this Court to grant the following permanent relief:

        A.     Direct PBGC as statutory trustee and fiduciary of the Plan to investigate, evaluate, and pursue claims and recovery as appropriate, arising from the performance of the Plan's former trustees; or,

        B.     Appoint a permanent supplemental trustee to perform the necessary investigation, evaluation of pursuit of claims, and recovery as appropriate, arising from the performance of the Plan's former trustee; or,

        C.     Remove PBGC as statutory trustee and fiduciary of the Plan and appoint another trustee in its place who will perform all of the statutory and fiduciary duties required of a trustee under ERISA and other federal law, including the necessary investigation, evaluation, and pursuit of claims and recovery as appropriate arising from the performance of the Plan's former trustees;

        D.     If applicable, order PBGC to reimburse USAPA for its attorneys fees and other costs and expenses pursuant to 29 U.S.C. § 1303(f)(3); and

E.    Provide such other and further relief as this Court deems just, appropriate,

and proper.

Respectfully submitted,

David V. Butler, Bar No. 914473
david.butler@bingham.com
Thomas R. Lotterman, Bar No. 375796
thomas.lotterman@bingham.com
BINGHAM McCUTCHEN LLP
2020 K Street NW
Washington, DC  20006-1806
Tele:  (202) 373-6000

Dated:  September 2, 2009

Exhibit 1

BINGHAM

David J. Butler
Direct Phone: (202) 373-6723
Direct Fax:    (202) 373-6418
david.butler@bingham.com

June 18, 2009

*Hand Delivery*

Vincent K. Snowbarger
Acting Director
Pension Benefit Guaranty Corporation
1200 K Street, NW
Suite 11101
Washington, D.C. 20005

      Re:    Retirement Income Plan of Pilots of US Airways, Inc.

Dear Mr. Snowbarger:

      This firm represents the US Airlines Pilots Association ("USAPA").

      USAPA represents more than 5,000 active US Airways pilots. Before 2003, USAPA's members participated in the Retirement Income Plan for Pilots of US Airways, Inc., which was an ERISA-governed pension plan. In 2003, a bankruptcy court found that the Plan was underfunded, terminated the Plan, and appointed PBGC as the terminated Plan's statutory trustee. Many of USAPA's members have vested rights under the Plan and expect to receive benefits when they retire -- albeit much less than if the Plan were adequately capitalized.

      USAPA and its members suspect that, before the bankruptcy proceeding and ensuing termination, the Plan's fiduciaries breached their duties by transferring assets out of the Plan and by making improper investments. In particular, USAPA and its members have reason to believe that the Plan's then-fiduciaries (i) pursued investments that may have involved self-dealing and conflicts of interest, and pursued questionable investment strategies for long-term pension plans; (ii) improperly transferred assets of the Plan to other US Airways plans in order to make up for shortfalls or losses in those other plans; and (iii) failed to take steps necessary to protect the Plan even as its investments were losing value. These actions resulted in the $2 billion funding shortfall that precipitated the Plan's distress termination.

      As the statutory trustee of the terminated Plan, PBGC is subject to the same duties as ordinary trustees of ERISA-governed plans, including the duties of loyalty, care, skill, prudence, and diligence. In particular, when someone (including a predecessor trustee) is potentially liable to an ERISA-governed plan, a trustee (including PBGC) must

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

202.373.6000
202.373.6001
bingham.com

Vincent K. Snowbarger
**June 18, 2009**
Page 2

investigate the relevant facts, explore courses of action, and, if in the best interests of the plan, bring suit or otherwise attempt to rectify the harm.

USAPA believes that PBGC has breached and continues to breach the duties it owes USAPA's members by failing to investigate and attempt to rectify the suspicious pre-bankruptcy asset transfers and investments that resulted in such catastrophic losses to the Plan. There is no indication that PBGC inquired into the circumstances of the suspicious transactions or evaluated ways to rectify any malfeasance of the Plan's previous trustees. Nor is there any indication that PBGC has attempted to rectify any harm for which the previous trustees may be liable.

On behalf of its members, USAPA hereby demands that PBGC comply with its duties by investigating and (if necessary) attempting to rectify the harms the Plan's previous fiduciaries may have caused. Alternatively, if PBGC believes it has complied with its duties, USAPA requests that PBGC provide the results of its investigation and the outcome of its attempts to rectify the harms.

Because of the nature of these requests, USAPA is simultaneously lodging them with Ms. Starr, PBGC's general counsel, as recommended by the PBGC Appeals Board in its February 29, 2008 final decision in another U.S. Airways case. If we do not hear from you or Ms. Starr within 30 days, we will assume that USAPA's requests are denied, and will proceed accordingly.

Please contact me at (202) 373-6723 if you would like to discuss these requests. I look forward to hearing from you.

Sincerely,

David J. Butler

cc:    Judith Starr, General Counsel, PBGC

Exhibit 2



 **PBGC** **Pension Benefit Guaranty Corporation**
Protecting America's Pensions    1200 K Street, N.W., Washington, D.C. 20005-4026

Office of the General Counsel

July 9, 2009

David J. Butler, Esq.
Bingham Mc Cutchen LLP
2020 K St. NW
Washington, DC 20006-1806

Re:    Retirement Income Plan for Pilots of US Airways, Inc.

Dear Mr. Butler,

This is in response to your letter dated June 18, 2009, conveying the suspicions of
your client, the US Airlines Pilots Association ("USAPA"), that the former fiduciaries of
the Retirement Income Plan for Pilots of US Airways, Inc. (the "Plan") breached their
fiduciary duties to the Plan before it was terminated. Specifically, you state that USAPA
and its members have reason to believe that the former Plan fiduciaries (i) pursued
investments that may have involved self-dealing and conflicts of interest, and pursued
questionable investment strategies for long-term pension plans; (ii) improperly
transferred Plan assets to other plans sponsored by US Airways in order to make up for
shortfalls or losses in those plans; and (iii) failed to take the necessary steps to protect the
Plan even as its investments were losing value. Your letter further asserts that the
Pension Benefit Guaranty Corporation ("PBGC") breached its duties to investigate and
attempt to remedy the breaches you suspect were committed by the former Plan
fiduciaries, requests an investigation or a report of any investigation that has been made,
and a response to the letter within 30 days or you will assume your requests have been
denied.

PBGC takes allegations of misconduct by former Plan fiduciaries very seriously.
PBGC has been investigating the prior allegations by US Airways pilots that there were
improper transfers from the Plan to other plans sponsored by US Airways. This
investigation has been hampered by the fact that the allegations were not specific and that
no documentation in support of these allegations was produced or even identified.
Nonetheless, we have been diligently investigating to determine if there is any support for
these allegations. Given the lack of specificity of the allegations and lack of any
evidence to start the trail, it should not be surprising that our investigation is not at this
time complete.

Your letter repeats those allegations (allegation (ii) above) and adds two new sets of allegations. First, you allege that Plan fiduciaries pursued investments that may have involved self-dealing and conflicts of interest and pursued questionable strategies for long term pension plans. These allegations are both broad and non-specific. To investigate these allegations, we will need the following information:

- Identification of the investments allegedly involving self-dealing and conflicts of interest;
- Identification of the allegedly questionable strategies;
- Identification of the Plan fiduciaries alleged to have been involved in self-dealing or having conflicts of interests;
- Identification of the time period of the activity;
- Any documents you have to support each allegation, or identification of specific documents that we can obtain from others; and
- Identification of any witnesses/sources of information regarding the allegations.

The second set of allegations you make is that US Airways failed to take steps to protect the Plan as its assets were losing value. Once again, these allegations are broad and non-specific. To investigate, we will need the following information:

- Time period in which you allege losses and failures to act occurred;
- Identification of the fiduciaries involved;
- Identification of the assets that were losing value, and quantification of such loss;
- Any documents you have to support each of the allegations, or identification of specific documents we can obtain from others to support them; and
- Identification of any witnesses/sources of information regarding the allegations.

As I am sure you can appreciate, vague and generic allegations of misconduct by unspecified individuals at unspecified times involving unspecified investments are not susceptible to effective investigation. Indeed, you have not provided us sufficient information to determine what, if anything, these allegations are based on. If you will provide this information to my staff, we will promptly review it. Future communications on this matter should be addressed to Nicole Hagan, Attorney, Office of the General Counsel, 1200 K Street, NW, Washington, D.C. 20005-4026.

We appreciate your contacting PBGC regarding this matter, and look forward to receiving additional information.

Sincerely,

Judith R. Starr
General Counsel

# BINGHAM

David J. Butler
Direct Phone: (202) 373-6723
Direct Fax:    (202) 373-6418
david.butler@bingham.com

June 18, 2009

*Hand Delivery*

Vincent K. Snowbarger
Acting Director
Pension Benefit Guaranty Corporation
1200 K Street, NW
Suite 11101
Washington, D.C. 20005

Re:    Retirement Income Plan of Pilots of US Airways, Inc.

Dear Mr. Snowbarger:

This firm represents the US Airlines Pilots Association ("USAPA").

USAPA represents more than 5,000 active US Airways pilots. Before 2003, USAPA's members participated in the Retirement Income Plan for Pilots of US Airways, Inc., which was an ERISA-governed pension plan. In 2003, a bankruptcy court found that the Plan was underfunded, terminated the Plan, and appointed PBGC as the terminated Plan's statutory trustee. Many of USAPA's members have vested rights under the Plan and expect to receive benefits when they retire -- albeit much less than if the Plan were adequately capitalized.

USAPA and its members suspect that, before the bankruptcy proceeding and ensuing termination, the Plan's fiduciaries breached their duties by transferring assets out of the Plan and by making improper investments. In particular, USAPA and its members have reason to believe that the Plan's then-fiduciaries (i) pursued investments that may have involved self-dealing and conflicts of interest, and pursued questionable investment strategies for long-term pension plans; (ii) improperly transferred assets of the Plan to other US Airways plans in order to make up for shortfalls or losses in those other plans; and (iii) failed to take steps necessary to protect the Plan even as its investments were losing value. These actions resulted in the $2 billion funding shortfall that precipitated the Plan's distress termination.

As the statutory trustee of the terminated Plan, PBGC is subject to the same duties as ordinary trustees of ERISA-governed plans, including the duties of loyalty, care, skill, prudence, and diligence. In particular, when someone (including a predecessor trustee) is potentially liable to an ERISA-governed plan, a trustee (including PBGC) must

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T 202.373.6000
F 202.373.6001
bingham.com

Vincent K. Snowbarger
**June 18, 2009**
Page 2

investigate the relevant facts, explore courses of action, and, if in the best interests of the plan, bring suit or otherwise attempt to rectify the harm.

USAPA believes that PBGC has breached and continues to breach the duties it owes USAPA's members by failing to investigate and attempt to rectify the suspicious pre-bankruptcy asset transfers and investments that resulted in such catastrophic losses to the Plan. There is no indication that PBGC inquired into the circumstances of the suspicious transactions or evaluated ways to rectify any malfeasance of the Plan's previous trustees. Nor is there any indication that PBGC has attempted to rectify any harm for which the previous trustees may be liable.

On behalf of its members, USAPA hereby demands that PBGC comply with its duties by investigating and (if necessary) attempting to rectify the harms the Plan's previous fiduciaries may have caused. Alternatively, if PBGC believes it has complied with its duties, USAPA requests that PBGC provide the results of its investigation and the outcome of its attempts to rectify the harms.

Because of the nature of these requests, USAPA is simultaneously lodging them with Ms. Starr, PBGC's general counsel, as recommended by the PBGC Appeals Board in its February 29, 2008 final decision in another U.S. Airways case. If we do not hear from you or Ms. Starr within 30 days, we will assume that USAPA's requests are denied, and will proceed accordingly.

Please contact me at (202) 373-6723 if you would like to discuss these requests. I look forward to hearing from you.

Sincerely,

David J. Butler

cc:     Judith Starr, General Counsel, PBGC

Exhibit 3

BINGHAM

David J. Butler
Direct Phone: (202) 373-6723
Direct Fax:    (202) 373-6418
david.butler@bingham.com

July 17, 2009

*Via Hand-Delivery*

Nicole Hagan, Esq.
Office of the General Counsel
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, DC 20005-4026

    Re:    Retirement Income Plan of Pilots of US Airways, Inc.

Dear Ms. Hagan:

    I am responding on behalf of the US Airline Pilots Association
("USAPA") to Judith Starr's letter of July 9, 2009, which requested that all future
communications concerning this matter be directed to you.

    In my first letter to PBGC, dated June 18, 2009, USAPA requested
information about the status of PBGC's investigations, if any, into potential
misconduct by earlier fiduciaries of the Retirement Income Plan for Pilots of US
Airways, Inc. ("the Plan"). Ms. Starr responded that an investigation is
underway, but ignored our request for information about the investigation, and
asserted that USAPA has not provided "sufficient information" to determine the
basis for USAPA's allegations that earlier misconduct occurred. Ms. Starr
concluded that "vague and generic allegations of misconduct by unspecified
individuals at unspecified times involving unspecified investments are not
susceptible to effective investigation."

    Ms. Starr appears to assume that USAPA has the duty to ferret out and
identify potential wrongdoing by earlier fiduciaries, and to provide that
information to PBGC, who, in turn, would decide whether such information is
worth pursuing. We respectfully disagree. PBGC has been appointed statutory
trustee of the Plan. As trustee, PBGC is required to act on behalf of USAPA and
its members who are beneficiaries of the Plan, and has the duty under ERISA and
other federal law to investigate the earlier trustees' management of the Plan. *See,
e.g.,* 29 U.S.C. § 1342(d)(3). Indeed, federal law mandates that PBGC investigate
the financial affairs of the Plan, 11 U.S.C. § 704(a)(4), and reach a determination

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

202.373.6000
202.373.6001
bingham.com

Nicole Hagan, Esq.
July 17, 2009
Page 2

regarding any claims that may be brought against third parties on behalf of the Plan, 29 U.S.C. § 1104(a)(1)(B). In other words, PBGC cannot sit idly by and wait for someone else to investigate and bring problems and issues to PBGC's attention. Rather, PBGC must utilize the many tools it was given by Congress to examine, for the benefit of current beneficiaries, the Plan's past investments and past management.

Further, under federal law, PBGC is accountable for all property it receives when it becomes statutory trustee, including records and documents it can and must review. 11 U.S.C. § 704(a)(2). In furtherance of that obligation, PBGC is empowered "to require the plan sponsor, the plan administrator, any contributing or withdrawn employer, and any employee organization representing plan participants to furnish any information with respect to the plan which the trustee may reasonably need in order to administer the plan." 29 U.S.C. § 1342(d)(1)(A)(vii). PBGC has even broader powers to do anything authorized by the Plan, 29 U.S.C. § 1342(d)(1)(A)(i), to do anything necessary to continue operation of the Plan, 29 U.S.C. § 1342(d)(1)(A)(vi), and to do anything necessary to protect the interests of plan participants and beneficiaries, 29 U.S.C. § 1342(d)(1)(B)(viii).

As indicated above, PBGC has the duty and the tools to investigate the Plan competently and diligently. Yet, since PBGC was appointed statutory trustee more than six years ago, its investigations into the investments, management, and potential misconduct of the Plan's earlier fiduciaries are, in Ms. Starr's own words, "not at this time complete." We do not know when the current investigation was initiated, but we do know that the only report of any post-termination "investigation" by PBGC that we were able to obtain through a FOIA request was a Plan Asset Audit dated January 11, 2006, which was completed more than two years after PBGC took over the Plan, and which simply verifies the fair market value of the Plan as of March 31, 2003.

As for the current investigation to which Ms. Starr refers in her letter, there is no indication of the investigation's focus, or its status -- other than to say that it is not complete. What is clear, however, is that PBGC should have launched and concluded its investigation long ago. In any event, time is of the essence, and further delay runs the risk of forfeiting any chance to recover from those who may be liable to the Plan. *See* 11 U.S.C. § 704(a)(1); 29 U.S.C. § 1104(a)(1)(B); 29 U.S.C. § 1105. Moreover, as a practical matter, each passing day allows memories to fade, documents to be destroyed, and relevant evidence to disappear.

USAPA has attempted on its own to investigate allegations of misconduct by earlier fiduciaries of the Plan. However, USAPA's efforts have been thwarted by its inability to compel the production of documents or testimony from relevant parties, and by the paucity of information it has received from US Airways and

Nicole Hagan, Esq.
July 17, 2009
Page 3

PBGC. USAPA's request for records from US Airways was rejected, and its
FOIA requests to PBGC have produced very few relevant documents.

Notwithstanding such obstacles, USAPA's review has uncovered a
number of questionable circumstances relating to activities under the watch of
prior Plan fiduciaries, and believes that, at a minimum, PBGC should have looked
into the following suspicious occurrences, investments, and transactions:

1) the allegations of fraud asserted by creditors in the US Airways
   bankruptcy proceedings that were not specifically addressed and
   adjudicated by the bankruptcy court;

2) the relationship between US Airways management and Tiger
   Management Fund (aka Tiger Management L.L.C. or Tiger
   Performance L.L.C.), including an equity swap agreement on or
   about September 17, 2001, that involved 8,291,700 shares of US
   Airways Group, Inc.;

3) the decisions of the Plan to invest in such stocks as Airgate PCS
   Inc., Alkermes Inc., BearingPoint Inc., Check Point Software,
   Elam PLC, Human Genome Sciences, Internet SEC Sys. Inc., and
   JDS Uniphase Corp., without taking steps to protect the Plan as
   these stocks lost most if not all of their value over a very short
   period of time;

4) the investment strategies and decisions of several investment
   managers of the Plan -- particularly those who lost significant
   portions of the investment dollars they where managing -- to
   determine whether the strategies pursued were consistent with the
   investment guidelines of the Plan;

5) the decision of the Plan to invest in Alchemy Partners (Air) LLP or
   Alchemy Partners (Guerney) Limited; and

6) the $2.1 billion funding shortfall that precipitated the Plan's
   distress termination on March 31, 2003.

Finally, we reiterate USAPA's demand for (i) copies of all requests for
information that PBGC has sent to the Plan's earlier fiduciaries and copies of any
responses; (ii) all information about formal or informal complaints against the
Plan's earlier trustees or investment managers, made between 2001 and the
present (including any reviews, analyses, investigations, or reports pursued or
developed by appropriate risk management personnel of the earlier trustees,
investment managers or their designees); and (iii) all information about PBGC's
investigations into any of the complaints or other problematic circumstances. As

Nicole Hagan, Esq.
July 17, 2009
Page 4

statutory trustee of the Plan, PBGC is obligated to provide such information to USAPA and its members. *See* 11 U.S.C. § 704(a)(7).

We would appreciate your comprehensive response to this letter, including the production of all documents and materials requested, by no later than August 7, 2009.

Sincerely,

David J. Butler