UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| US AIRLINE PILOTS ASSOCIATION, | |
|---|---|
| Plaintiff, | |
| v. | Civil Action 09-1675 (HHK) |
| PENSION BENEFIT GUARANTY CORPORATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff US Airline Pilots Association ("the Association") brings this action against the Pension Benefit Guaranty Corporation ("PBGC"), alleging that PBGC has breached its fiduciary duties as the statutory trustee of a pension plan of which the Association's members are beneficiaries. Before the Court is the Association's motion to compel [#42], which seeks the production of Nicole Hagan, a PBGC attorney, for deposition regarding an investigation she conducted into the pension plan's affairs. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted in part and denied in part.

### I. BACKGROUND

In 1958, US Airways established a vested, defined-benefit pension plan for its pilots ("the Plan"). Compl. ¶ 7. The Plan operated without substantial changes until March 31, 2003, when it was terminated as a result of US Airways's bankruptcy. *See In re US Airways Grp., Inc.*, 369 F.3d 806, 811 (4th Cir. 2004); *In re US Airways Group, Inc.*, 296 B.R. 734, 748 (Bankr. E.D. Va.

2003). Pursuant to an agreement between PBCG, the pilots' then-union, and US Airways, PBCG then became the Plan's statutory trustee, a role it typically takes on when a pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, terminates without enough assets to pay all of its promised benefits. *See Boivin v. US Airways, Inc.*, 446 F.3d 148, 150–51 (D.C. Cir. 2006). When serving as a statutory trustee, PBGC "wears two hats: one as guarantor of ERISA's insurance program . . . and one as trustee." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 331 (4th Cir. 2007).

The Association avers that PBGC has breached the fiduciary duties that it owes to the Plan's beneficiaries in its capacity as statutory trustee. Compl. ¶¶ 30–52; *see* 29 U.S.C. § 1342(d)(3) (stating that a statutory trustee "shall be subject to the same duties as those of a trustee" under the bankruptcy code, as described in 11 U.S.C. § 704). Specifically, the Association avers, PBGC has failed to adequately investigate possible malfeasance by the Plan's prior managers that resulted in significant losses in value of the Plan's assets. *See* Compl. ¶¶ 27, 30–41. After making some effort to appraise PBGC of these issues, Compl. ¶¶ 25–29, the Association filed this suit, seeking to force PBCG to fulfill its duties or to have PBCG supplemented or replaced as trustee of the Plan.

## II. ANALYSIS

The parties' current dispute centers on a report written by a member of PBCG's Office of General Counsel, Nicole Hagan (whom the Association seeks to depose). Hagan was part of a PBGC team tasked with "investigat[ing] allegations that former fiduciaries of [the Plan] . . . breached their fiduciary duties with respect to the Plan." Hagan Decl. [#6-4] ¶ 3. On July 17,

2009, Hagan received a letter from the Association's counsel raising specific instances of possible misconduct by prior Plan fiduciaries that, the Association argued, warranted further investigation. Hagan Decl. ¶ 7. Accordingly, Hagan commenced an investigation into those allegations. Hagan Decl. ¶ 8. She documented her findings in a November 24, 2010 report, *see* Pl.'s Mot. to Compel Ex. 4 [#42-6] ("Hagan Report"), which PBGC then disclosed to the Association.

The Association now seeks to depose Hagan regarding the substance and scope of her investigation. PBGC, however, argues that Hagan's investigation is protected by the attorney work-product doctrine. In order to resolve this dispute, the Court must answer two questions: was Hagan's investigation protected by the work-product doctrine? If so, has that protection been waived? The Court will address each question in turn.

**A.      Hagan's Investigation Was Protected by the Work-Product Privilege**

The work-product doctrine, which was first enunciated in *Hickman v. Taylor*, 329 U.S. 495 (1947), is based on the Supreme Court's recognition that "to prepare for litigation, an attorney must 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.'" *United States v. Deloitte LLP*, 610 F.3d 129, 134 (D.C. Cir. 2010) (quoting *Hickman*, 329 U.S. at 511). The doctrine, as codified in the Federal Rules of Civil Procedure, protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A). It also protects "intangible work product," such as an attorney's "mental impressions." *Deloitte*, 610 F.3d at 136.

The threshold question here is thus whether Hagan conducted her investigation "in anticipation of litigation." The Court concludes that she did. As PBGC points out, "where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991). Here, as described in her report, Hagan investigated specific events (certain transactions and decisions made by the Plan's prior managers) and specific possible violations (of fiduciary duties) by specific parties (the prior fiduciaries). *See* Hagan Report at 1–2. Thus, Hagan's investigation was undertaken "in anticipation of litigation," and the work-product privilege applies to the materials she generated and to her "mental impressions, conclusions, opinions, or legal theories." *Deloitte*, 610 F.3d at 135 (quoting FED. R. CIV. P. 26(b)(3)(B)) (internal quotation marks omitted).[1]

**B.  PBGC Has Waived the Work-Product Privilege as to Hagan's Investigation**

The Association argues that even if Hagan's investigation was initially protected, PBGC's disclosure of the Hagan Report to the Association served to waive work-product protection not only for the Report itself but also for the Report's subject matter, *i.e.*, the investigation. The Association argues that subject-matter waiver is appropriate here because PBGC has made a tactical decision to disclose only favorable protected material. PBGC first responds that the Report's disclosure could not have waived protection for the investigation discussed therein because the Report itself was not protected work product. It then argues that it has made no

---

[1] The Association does not seriously dispute that Hagan conducted her investigation in anticipation of litigation; rather, it simply "assumes without admitting" that she did. Pl.'s Mem. in Supp. of Mot. to Compel [#42-1] ("Pl.'s Mem.") at 8 n.1.

tactical use of protected material that would justify subject-matter waiver. The Court first addresses whether the Report itself was protected work product.

PBGC asserts that the Hagan report was not protected because it "did not contain privileged information, but rather set forth facts and summarized findings." Def.'s Opp'n to Pl.'s Mot. to Compel ("Def.'s Opp'n") at 6. This position is wholly untenable. The "findings" that the Report "summarized" were legal conclusions that Hagan reached on the basis of an investigation that, as discussed above, was conducted in anticipation of litigation. *See* Hagan Report at 5–8. As such, they qualify as attorney work product. *Safecard Servs.*, 926 F.2d at 1203. Further, PBGC's assumption that a document prepared for litigation is not privileged because it contains only factual material is simply incorrect. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005) ("The circuit's case law is clear that '[t]he work-product doctrine simply does not distinguish between factual and deliberative material.'" (quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987)) (alteration in original)). Simply put, it is clear that the Hagan Report was privileged.

The question thus becomes whether PBGC's disclosure of the Hagan Report served to waive work-product protection for the subject matter discussed therein: Hagan's investigation and findings. Since 2008, subject-matter waiver has been governed by Federal Rule of Evidence 502, which applies to disclosures of information covered by the attorney-client privilege or work-product protection. Rule 502 provides that a waiver resulting from a disclosure of protected information in a federal proceeding extends to undisclosed protected material "only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." FED. R. EVID.

5

502(a); *see Trs. of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 10–11 (D.D.C. 2010) (explaining that Rule 502 "modified the scope of any forfeiture that arises from the disclosure of privileged information").[2] To assess whether Rule 502(a) allows for subject-matter waiver here, the Court must first determine whether PBGC's disclosure of the Hagan Report constituted an "intentional" waiver within the meaning of Rule 502(a)(1).

Few courts have interpreted Rule 502(a)(1)'s intentional-waiver language, but those that have appear to presume that a deliberate disclosure constitutes an intentional waiver, at least absent credible evidence that the disclosing party was unaware of the contents of the disclosed material. *See Seyler v. T-Systems N. Am., Inc.*, 2011 WL 196920, at *3 (S.D.N.Y. Jan. 21, 2011); *Lerman v. Turner*, 2011 WL 62124, at *9–10 (N.D. Ill. Jan. 6, 2011). In fact, the *Lerman* court confronted precisely the situation presented here: an attorney hired by the defendant produced an investigative report, which was then disclosed to the plaintiff and her counsel. *See Lerman*, 2011 WL 62124, at *1. After the plaintiff sought additional related materials, the defendant argued, as PBGC does here, that the report could not have waived the privilege for the other materials because it was never protected in the first place. *See id.* at *4–6. The *Lerman* court rejected that argument and concluded that the undisputedly deliberate disclosure of the report constituted an intentional waiver. *See id.* at *9–10.

---

[2] The Court notes that the parties' arguments are directed not at Rule 502 but rather at the now-outdated waiver standard enunciated in *In re Sealed Case*, 676 F.2d 793, 817–25 (D.C. Cir. 1982). Even so, because (as discussed below) Rule 502 did not change the substantive law regarding subject-matter waiver where privileged material is used strategically, the parties' arguments are still relevant here.

The *Lerman* court's logic is equally applicable here. It is undisputed that PBGC deliberately provided a copy of the Hagan Report to the Association, and there is no suggestion that PBGC was somehow unaware of the Report's contents. *Cf. Seyler*, 2011 WL 196920, at *3. Indeed, there is simply no colorable argument that the Hagan Report was not privileged; PBGC's assertion to that effect has no support in law and contradicts PBGC's own arguments as to the privilege's application to Hagan's investigation. As the party asserting the work-product privilege, PBGC bears the burden of showing that the privilege applies and has not been waived. *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002) (citing *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)). It has failed to carry that burden here. Accordingly, the Court will now turn to the final Rule 502(a) factor: whether the disclosed and undisclosed materials "ought in fairness to be considered together." Fed. R. Evid. 502(a)(3).

The Association argues that PBGC is attempting to use the work-product doctrine as both a sword and a shield by relying on the Hagan Report to show that it has complied with its fiduciary duties as trustee of the Plan but barring the Association from questioning Hagan as to the scope and sufficiency of her efforts. Thus, the Association avers, fairness requires that it be allowed to depose Hagan regarding her investigation. PBGC responds that it has not relied on the investigation and thus has not placed the sufficiency of the investigation at issue. The Association has the stronger position.

Although Rule 502 adjusts the mechanism for subject-matter waiver in cases of both inadvertent and deliberate disclosure, it "does not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter." Fed. R. Evid.

7

502 advisory committee's note. Thus, as before the rule's enactment, subject-matter waiver is appropriate as a matter of fairness where "the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." CHARLES A. WRIGHT ET AL., 8 FEDERAL PRACTICE & PROCEDURE § 2016.2 (3d ed., 2010 update); *see Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 44 (D.D.C. 2009) ("[A] party may not claim privilege over material that they place at issue in litigation." (citing *Estate of Cornwell v. AFL-CIO,* 197 F.R.D. 3, 4 (D.D.C. 2000)).

PBGC's position that it has not relied on the Hagan investigation during this litigation is untenable. PBGC did precisely that at the hearing on the Association's first motion for a preliminary injunction. After describing the Association's allegations of misconduct, PBGC's counsel stated: "PBGC diligently opened an inquiry. Although the allegations are thin, we opened another inquiry, and that investigation is ongoing. So at each stage PBGC didn't refuse [to investigate]; it did what was appropriate under the circumstances." Prelim. Inj. Hr'g Tr. 31, Mar. 25, 2010. After a description of the ongoing investigation, the following colloquy occurred:

> THE COURT: Well, but are you saying that you are doing what the plaintiffs want me to appoint a special trustee to do?
>
> MR. WILSON: That's exactly what we're doing, Your Honor. We're investigating. We've said so in our papers.
>
> THE COURT: So your position would be, if there is a duty of inquiry, you're inquiring.
>
> MR. WILSON: That's right, Your Honor.

Prelim. Inj. Hr'g Tr. 32, Mar. 25, 2010. Further, PBGC's opposition to the Association's renewed motion for a preliminary injunction included a copy of the Hagan Report, which PBGC cited to rebut the Association's allegations of fiduciary breaches by the Plan's prior trustees. *See* Def.'s Opp'n to Pl.'s Renewed Mot. for Prelim. Inj. [#38] at 29–30. And, as the Association points out, PBGC's answer lists as an "affirmative defense" the fact that PBGC is currently investigating the Association's allegations of wrongdoing. *See* Answer at 8.

In short, throughout this litigation, PBGC has presented the Hagan investigation to this Court as evidence that PBGC has complied with whatever duty to investigate the Plan's affairs that it may, as trustee of the Plan, now have. PBGC's assertion that it "has never used the scope or adequacy of its investigation . . . as its defense, but rather argue[d] that USAPA cannot prove that PBGC owed or breached any duty to investigate . . . under the circumstances of this case" is incoherent; part of PBGC's argument that it has not "owed *or breached* any duty to investigate" is its assertion that it "if there is a duty of inquiry, [it is] inquiring." Prelim. Inj. Hr'g Tr. 32, Mar. 25, 2010. In support of that assertion, PBGC has proffered the Hagan Report; it may not now use the work-product privilege to "deny its adversary access to additional materials that could provide an important context for proper understanding of" the Report. WRIGHT ET AL., 8 FEDERAL PRACTICE & PROCEDURE § 2016.2; *see id.* § 2016.6 ("When a party puts privileged matter in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject.").

Consequently, Rule 502(a) allows the Association to question Hagan regarding "undisclosed communications or information concern[ing] the same subject matter" as the Report. FED. R. EVID. 502(a). A review of the Report shows that the "same subject matter"

9

includes: the scope and methods of the investigation; the documents reviewed; the efforts made to obtain more documents; the Plan's investment policy; the US Airways Master Trust's policies and procedures; and Hagan's findings. Thus, questions in the Association's topics three and five, which cover the scope, conduct, participants, and conclusions of the investigations in which Hagan participated, are permissible. *See* Pl.'s Mot. to Compel Ex. 5 [#42-7] ("Revised Dep. Notice") at 6–7. Likewise, questions in topic four, "related to the preparation and substantive assertions set forth in the October 23, 2009 Declaration of Laura J. Scully," Revised Dep. Notice at 6, are permissible, but only insofar as they relate to Scully's research and findings as described in the Hagan Report. *See* Hagan Report at 6 & n.23.

Conversely, questions in topic nine, which covers "[a]ll facts or information known to PBGC related to PBGC's evaluation, valuation or consideration of legal claims the Plan has, had or may have against third parties," Revised Dep. Notice at 7–8, do not fall within the scope of the work product waiver here. The Hagan Report does not address the existence or potential strength of any legal claims that the Plan may have against any third parties. Although that issue is related to the Report's subject matter, it cannot be said to be "the same." Accordingly, the Association may not question Hagan about this topic.

### III. CONCLUSION

For the foregoing reasons, the Association's motion to compel must be granted in part and denied in part.

Accordingly, it is this 19th day of April 2011 hereby

10

**ORDERED** that plaintiff's motion to compel the production of Nicole Hagan for deposition [#42] is **GRANTED** as to topics three, four and five listed in plaintiff's revised deposition notice; and it is further

**ORDERED** that plaintiff's motion is **DENIED** as to topic nine.

Henry H. Kennedy, Jr.
United States District Judge